**Robert S. BENHAM, as Receiver of Manufacturers and Wholesalers Indemnity Exchange, Plaintiff-Appellant,**

v.

**John William PRYKE, as lead Underwriter, personally, and as representative of those certain Underwriters at Lloyd's London, Under Lloyd's Policies No. FTL001623 and FTL00945 and Cover Notes U73167A and U73167B; and Excess Insurance Company, Ltd., Defendants-Appellees,**

**and**

**Taubert Wood Industries, Inc., a Tennessee corporation; Motor Rentals, Inc., a Missouri corporation; Evel Knievel d/b/a Evel Knievel Enterprises; and Big M Oilfield Service, Inc., a Montana corporation, Intervenors.**

No. 80CA0926.

Colorado Court of Appeals, Div. II.

Oct. 29, 1981.

Holmes & Starr, Kenneth L. Starr, Sidney DeLong, Denver, for plaintiff-appellant.

Kenneth C. Groves, Denver, for defendants-appellees.

PIERCE, Judge.

Plaintiff, the receiver of Manufacturers and Wholesalers Indemnity Exchange (M&W), appeals a dismissal for failure to state a claim for relief granted in favor of defendants underwriters of Lloyd's of London (the reinsurers). This is an action to recover proceeds allegedly due under assessment liability reinsurance policies issued by the reinsurers to some former subscribers of M&W. We reverse.

M&W was an interinsurance exchange governed by § 10–13–101, et seq., C.R.S. 1973. M&W subscribers, consequently, were subject to contingent assessment liability if M&W's liabilities in a given year exceeded its assets. Some subscribers, to insure against this risk, purchased reinsurance certificates from the defendants to cover possible assessment liability. M&W was placed into receivership in 1975, and the trial court in 1977 ordered the receiver to levy assessments against all M&W subscribers whose policies were in effect during 1974 and 1975.

The terms of reinsurance coverage were provided for in a "Master Agreement" from which Article 1 of that agreement read that coverage was "for assessment made during the currency of this agreement . . . ." The Master Agreement terminated on June 30, 1974. An assessment was not levied before June 30, 1974, but rather in February 1977. Accordingly, the trial court held that the assessment of the subscribers was not made "during the currency" of the reinsurance agreement because it terminated on June 30, 1974.

Plaintiff contends that since the attorney-in-fact was authorized to issue certificates of reinsurance to any subscriber

who wanted to purchase assessment liability coverage and since Article 14 stated that the Master Agreement's termination had no effect on the coverage afforded in issued certificates of reinsurance, the "currency" of the agreement extended until the termination of outstanding reinsurance certificates, rather than until the termination of the Master Agreement itself. We agree with this argument.

The loss insured against was an assessment. Assessment was a prerequisite to any liability of the reinsurers. The risk assumed was liability of assessment and not risk of actual loss to individual subscribers from payment or recovery of judgment. The impaired financial condition of M&W did not create actual liability but rather the liability flowed from assessments. The subscribers could suffer no loss and the reinsurers could be under no liability until an assessment was made. *In re International Re-Insurance Corp.*, 32 Del.Ch. 471, 86 A.2d 647 (1952).

The Master Agreement stated that the termination of that document had no effect on the coverage afforded by previously issued 3-year certificates. Those certificates remained in force until their natural expiration date.

The trial court erroneously relied on *International Corp.*, *supra*, in granting the motion to dismiss. *International* is distinguishable from this case. No certificates of reinsurance were involved there, and here, an intent existed in Article 14 to construe the currency of the agreement to include any outstanding certificates of reinsurance.

In dismissing for failure to state a claim, the trial court explicitly relied on not only the plaintiff's complaint, but also on plaintiff's statement of facts which included the Master Agreement. Since the trial court went beyond the pleadings and considered other matters, it was, in effect considering the defendant's motion as one for summary judgment. *Foster Lumber Co. v. Weston Constructors, Inc.*, 33 Colo.App. 436, 521 P.2d 1294 (1974). Summary judgment, however, cannot be granted if questions of material fact are unresolved. *Bailey v. Clausen*, 192 Colo. 297, 557 P.2d 1207 (1976).

The certificates at issue in this action are equivalent to a "discovery policy." In them, coverage is perfected only if an assessment is levied and reported within a policy term. *See James J. Brogger & Associates, Inc. v. American Motorists Insurance Co.*, 42 Colo.App. 464, 595 P.2d 1063 (1979). The loss had to be "discovered" during the pendency of the insurance coverage. *First National Bank v. Maryland Casualty Co.*, 41 Colo.App. 195, 581 P.2d 744 (1978). The ultimate question then remains as to whether reinsurance coverage existed at the time of the 1977 assessment, and a genuine issue of material fact exists as to whether any certificates of reinsurance were issued so as to be in force at the time of the 1977 assessment. Therefore, neither dismissal nor summary judgment are appropriate at this juncture of this action.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

STERNBERG and TURSI, JJ., concur.