**Frederick A. SHERLOCK and Linda J. Sherlock, Plaintiffs,**

v.

**Norm R. PERRY, and Niagara Fire Insurance Company, A Foreign Insurance Company, and American Home Assurance Company, Defendants.**

**Civ. A. No. 84CV–003–5AA.**

United States District Court, E.D. Michigan, S.D.

March 21, 1985.

Edward R. Stein, Stein & Moran, Ann Arbor, Mich., for plaintiffs.

Brian Einhorn, Collins, Einhorn & Farrell, P.C., Southfield, Mich., Norm R. Perry, Berrien Springs, Mich., for defendant American Home Assur. Co.

Daniel L. Garan, Garan, Lucow, Miller, Lehman, Seward, Cooper & Becker, P.C., Detroit, Mich., for defendant Niagara Fire Ins. Co.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the court on the motion of garnishee American Home Assurance Company for summary judgment. For the reasons stated herein, the motion is denied.

## FACTS

### The Relationship of the Parties

The pertinent facts are recited in American Home's motion, and are not disputed by plaintiffs in their response. The principal defendant, Norm Perry, filed no response to this motion. This case arises out of an action for legal malpractice, brought by plaintiffs Frederick and Linda Sherlock against their attorney, Mr. Perry, in the Western District of Michigan. Judgment by default was entered in favor of Linda Sherlock and against Perry in the amount of one million dollars, and in favor of Frederick Sherlock and against Perry for $350,000. Plaintiffs subsequently filed writs of garnishment against two insurance carriers who had insured Perry against liability for professional negligence, American Home and Niagara Fire Insurance Company. American Home had been the endorsed malpractice insurance carrier for the State Bar of Michigan until August of 1981, at which time Niagara became the endorsed carrier.

Both garnishee insurance companies denied that they had any liability towards Perry under the policies that they had issued to him. Plaintiffs subsequently brought the instant action in this court for enforcement of the writs.

### The Underlying Claim of Professional Negligence

Defendant Perry undertook representation of the Sherlocks after the latter had sustained injuries in an automobile accident in South Bend, Indiana on August 21, 1978. The Sherlocks had been riding on a motorcycle that was struck by a vehicle owned by the South Bend Community School System. At that time, an Indiana statute required that claims for personal injury asserted against a government agency be brought within 180 days of the occurrence of the accident. Perry failed to bring the action against the School System within the requisite period, and on January 5, 1981, the School System obtained summary judgment on the claims asserted against it in the Indiana trial court, relying on this statute.

The remaining defendant, the driver of the government-owned vehicle, then moved for summary judgment, citing another Indiana statute for the proposition that dismissal of a governmental agency precluded

liability of the individual employee whose conduct gave rise to the accident. The trial court denied this motion, but the Court of Appeals reversed, thereby resolving a split of authority in that court concerning the application of the latter statute to cases of this sort. The opinion of the Court of Appeals was issued on January 29, 1982.

The decision of the Court of Appeals was anticipated by Perry. On May 18, 1981, Larry Pleasants, an Indiana attorney who appears to have been Perry's local counsel in the case, wrote a letter to Perry, advising him to contact his malpractice carrier in light of Perry's failure to file suit against the government defendants within the prescribed period. This letter was written while the appeal concerning the liability of the driver was still pending.

On February 3, Perry sent a letter to Heines Goebel Hammond, an agent for Niagara, stating that he anticipated a claim being filed against his errors and omissions policy by the Sherlocks. On February 11, 1982, Edward Stein wrote a letter to Perry, stating that he was representing the Sherlocks for the loss of their claims against the School System and the driver. He advised Perry to contact his malpractice carrier.

DISCUSSION

The errors and omissions policy written by American Home for the protection of Perry defined the scope of coverage as follows:

1. Policy Period and Territory

This policy applies to acts or omissions occurring anywhere in the world provided claim is made or suit is brought within the United States of America, its territories or possessions or Canada, prior to the end of the policy period, if claim is first made during the policy period or an extended reporting period purchased in accordance with Condition IV.

A claim is first made during the policy period or extended reporting period if:

a) during the policy or extended reporting period the insured shall have knowledge or become aware of any act or omission which could reasonably be expected to give rise to a claim under this policy and shall during the policy period or extended reporting period give written notice thereof to the Company in accordance with Conditions VII.

b) any claim is first made and reported to the Company during a policy year alleging money changes which are payable under this policy, any additional claims which are made, or suits or proceedings in connection therewith which are brought subsequent to that policy year for money damages resulting from the same or related acts or omissions shall be considered part of the claim which was first made and reported to the Company during that policy year.

The parties agree that this policy, which defines coverage against particular negligent acts according to the time that a claim is first made against the insured, and the time that the insured first notifies the insurer, is of a type commonly referred to in the insurance industry as a "claims made" or "discovery" policy. The Supreme Court of Michigan has recently described in detail the difference between such a policy and the species of insurance contracts that is better known to the lay person, the so-called "occurrence" policy, as follows:

As a general proposition, although not in every case and indeed not in this case, a "discovery" or "claims made" policy is one in which indemnity is provided no matter when the alleged error or omission or act of negligence occurred, provided the misdeed complained of is discovered and the claim for indemnity is *made* against the insurer during the policy period. Some "claims made" policies, and this case involves one of them, are written to provide coverage only for negligent acts or omissions which occur during the policy period and for which the claim is made against the insurer during that period.

An "occurrence" insurance policy, on the other hand, generally is one in which indemnity is provided no matter when the claim is brought for misdeed complained of, providing it occurred during the policy period.

One writer described the difference between "claims made" and "occurrence" policies as follows:

"The major distinction between the 'occurrence' policy and the 'claims made' policy constitutes the difference between the peril insured. In the 'occurrence' policy, the peril insured is the 'occurrence' itself. Once the 'occurrence' takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the 'claims made' policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place". Kroll, The Professional Liability Policy "Claims Made", 13 Forum 842, 843 (1978).

*Stine v. Continental Casualty Co.*, 419 Mich. 89, 97, 349 N.W.2d 127 (1984).

The parties to this motion also agree that the event by which Perry first received notice of the claim against him by the plaintiffs was the May 18, 1981 letter from Pleasants. American Home asserts that Perry did not give notice of the claim against him to his malpractice carrier until February 3 of the following year, at which time the American Home policy was no longer in effect. The parties then join the issue of whether American Home is liable under the errors and omissions policy it wrote on behalf of Perry when Perry received knowledge of the claim within the coverage period, but did not give notice of the claim to American Home until after the period had expired. Each party contends that proper application of the *Stine* opinion leads to the inevitable conclusion that its position must be adopted by this court.

■ The American Home policy requires the occurrence of two events during the policy period in order for coverage to attach to losses resulting from professional negligence. First, the insured must become aware of an act or omission on his part that might give rise to a claim against him for professional negligence. Second, the insured must give written notice of the claim to the insurer during the policy period or the extended reporting period.

There is no dispute that Perry became aware of his failure to file his complaint against the School System and its driver within the time prescribed by state law, thereby subjecting himself to potential liability, during the American Home policy period. As the parties agree, Perry obtained such knowledge no later than May 18 of 1981, when he received the letter from Pleasants. Further, there is no dispute that Perry did not give written notice to American Home within the policy period or the extended reporting period, but failed to provide such notice until February 3. Although such notice was given to Mr. Hammond, an agent of Niagara, American Home does not contend that such notice to Hammond was not effective to provide notice to it of the claim.

The question then, is whether or not Perry's failure to give timely notice to his insurance carrier precludes liability under the American Home policy. The answer to this question is derived in part from a provision of the Michigan Insurance Code, M.C.L.A. § 500.3008, which was construed by the *Stine* Court to apply to "claims made" policies such as the one that American Home provided for Mr. Perry in this case. The statute provides as follows:

500.3008. Liability insurance policies; notice to insurer

Sec. 3008. In such liability insurance policies there shall be a provision that notice given by or on behalf of the insured to any authorized agent of the insurer within this state, with particulars sufficient to identify the insured shall be deemed to be notice to the insurer; and also a provision that failure to give any notice required to be given by such policy within the time specified therein shall not invalidate any claim made by the insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

This provision clearly indicates that failure of the insured to give timely notice of the claim to the insurer as required by the policy does not "invalidate any claim" if the

insured can demonstrate that it was not "reasonably possible" for him to give such timely notice, and that he gave such notice as soon as reasonably possible.

Several courts have construed this provision to provide the insured with broad protection against the forfeiture of a claim because of delayed notice. In *Wendel v. Swanberg,* 384 Mich. 468, 185 N.W.2d 348 (1971), the Court concluded that coverage would be defeated by failure to give timely notice only when the insurer demonstrates that it was prejudiced by the delay:

> Notice to an authorized agent is notice to the insurer. By statute liability insurance policies must contain "a provision that notice given by or on behalf of the insured to any authorized agent of the insurer within this state, with particulars sufficient to identify the insured shall be deemed to be notice to the insurer * *."

> Mere delay in giving the required notice does not work a forfeiture because such provisions are construed to require notice within a reasonable time.

> Prejudice to the insurer is a material element in determining whether notice is reasonably given and the burden is on the insurer to demonstrate such prejudice.

*Id.* at 478, 185 N.W.2d 348 (citations omitted).

Further, the question of the reasonableness of the notice is one of fact for the jury to ascertain, *id.* at n. 8, citing *Kravat v. Indemnity Ins. Co.,* 152 F.2d 336 (6th Cir.1945).

Consequently, because American Home has failed to demonstrate in this motion that it was unfairly prejudiced by Perry's failure to give notice of the claim within the period specified by the policy, it is not entitled to disclaim coverage for this claim because of the late notice. For that reason, the motion is denied.

SO ORDERED.